

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

|  |  |
|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF:  D.D.<br><br>Appellant. | )  No. ED105169<br>)<br>)  Appeal from the Circuit Court of<br>)  the City of St. Louis<br>)<br>)  Honorable Philip D. Heagney<br>)<br>)<br>)  Filed: May 21, 2019 |

### Introduction

D.D. ("Appellant") appeals a judgment committing him as a sexually violent predator ("SVP").  Appellant raises three points on appeal.  Appellant claims the Sexually Violent Predator Act ("the Act"), under which he was committed, is unconstitutional for violating his rights to due process and equal protection as the use of the Act was arbitrarily chosen over civil commitment under a guardianship petition.  Appellant argues the court which tried Appellant's SVP proceeding ("SVP court") erred or abused its discretion by failing to *sua sponte* continue the trial ("SVP trial") under § 632.492[1] until the completion of a concurrent guardianship proceeding.  Appellant also claims his counsel at the SVP trial was ineffective for failing to

---

[1] All statutory references are to RSMo (2016) unless otherwise indicated.

request a continuance from the SVP court to allow for the completion of the guardianship proceedings.[2]

We disagree. We deny Appellant's three points on appeal, and we affirm the judgment of the SVP court committing Appellant as an SVP.

## Factual and Procedural Background

Appellant was arrested in 2002 and entered guilty pleas for two counts of harassment for making phone calls of a sexual nature to a grocery store. Appellant entered guilty pleas for three more counts of harassment occurring in 2002. In 2004, Appellant was given a citation for lewd and indecent conduct for masturbating in public. Appellant received another citation for lewd and indecent conduct in 2005 when he was seen with his genitals exposed in a parking lot. On another occasion in 2005, Appellant knocked on a nursing home window with his genitals exposed.

On November 7, 2006, Appellant exposed his penis to a woman entering her building. Appellant came toward the woman from hiding and asked if she wanted to "play" with his genitals. Appellant then began masturbating. The woman yelled at Appellant, and Appellant grabbed her buttocks. Before she could get away, Appellant said, "Watch this," and ejaculated onto the steps leading into the apartment building.

On November 23, 2006, Appellant stepped out from hiding, grabbed a female employee walking into work at a fast food chain, and pulled her into the restaurant. When Appellant grabbed her, the woman fell to one knee. With his pants around his ankles while holding his erect penis, Appellant demanded oral sex from the woman.

On November 28, 2006, two women reported Appellant for sexual misbehavior. The first woman told police Appellant was staring at her while masturbating in public. Appellant

---

[2] Appellant made no insufficiency of the evidence claims with regards to the SVP proceedings.

2

confronted a second woman at a building she owned. Appellant followed her into a stairwell with his pants down and masturbated. He ejaculated onto the landing of the stairs. This woman was running from Appellant when he ran up the stairs to her and attempted to pull down her pants. She screamed and threw her keys. Appellant fled from the building.

In 2009, Appellant entered guilty pleas for a charge of both attempted forcible sodomy[3] and sexual assault as well as multiple second degree sexual misconduct charges, related to the incidents in November 2006. After the plea, Appellant was sentenced to 10 years in Missouri Department of Corrections ("DOC").

Appellant accumulated over one hundred conduct violations in the six years in prison following his guilty plea. On three separate occasions, Appellant received a conduct violation for intentionally getting the attention of a female officer while masturbating.

Appellant was scheduled to be released on November 29, 2015. In August 2015, a psychologist at the DOC filed an end-of-confinement report notifying the office of the Attorney General of Missouri ("Attorney General") and a multidisciplinary team in the Department of Mental Health ("DMH") that Appellant may be an SVP. Appellant was transferred to DMH for holding during the SVP proceedings. A multidisciplinary team consisting of one DOC and two DMH medical practitioners voted unanimously Appellant met the statutory definition of an SVP[4]. A review committee of prosecuting attorneys also later voted unanimously Appellant met the definition. On October 7, 2015, the Attorney General filed a petition in the Probate Division of the Circuit Court of St. Louis City to commit Appellant as an SVP.

---

[3] The Sexually Violent Predator Act (§ 632.480 through § 632.525) defines a sexually violent offense to include "…forcible sodomy…or an attempt to commit [forcible sodomy]". § 632.480(4). A sexually violent predator is someone who: (1) suffers from a mental abnormality; (2) has "pled guilty...[to] a sexually violent offense;" and (3) is "more likely than not to engage in predatory acts of sexual violence if not confined in secure facility". § 632.480(5).

[4] "(5) "Sexually violent predator", any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who: (a) Has pled guilty…of a sexually violent offense…" § 632.480(5)(a) RSMo (2016).

On December 1, 2015, a division of the probate court ("Probable Cause court") found probable cause based on the pleadings that Appellant was an SVP. The Probable Cause court ordered Appellant to be detained at DMH and be examined by a psychiatrist or psychologist to continue the statutory SVP procedure. Dr. Richard Scott ("SVP Evaluator") examined Appellant and filed an evaluation with the SVP court on February 1, 2016. The case was transferred to a different division in the SVP court and set for trial on March 30, 2016[5].

During these proceedings, Appellant was held at DMH. He was transferred to Ste. Genevieve County Jail, but behavior problems caused him to be transferred to the Sex Offender Rehabilitation and Treatment Service ("SORTS") at the Southeast Missouri Mental Health Center ("SMMHC"). SORTS documented aggressive behavior toward female security aides and nursing staff which the SVP Evaluator mentioned as reason for a high risk of reoffending.

Appellant's counsel withdrew from the case, and Appellant filed a motion to proceed *pro se*. The SVP court denied this motion and continued the trial to October 24, 2016[6].

On July 26, 2016, the State through the General Counsel for DMH ("General Counsel") filed a petition for appointment of a guardian for Appellant. In the petition, General Counsel claimed Appellant:

> "displays inability to cope with frustration which results in him becoming physically aggressive. He refused medications regularly, and is unable to provide for his own food, safety and medical treatment."

General Counsel sought to appoint the Public Administrator as guardian of Appellant's person and conservator of Appellant's estate.

---

[5] Trial must be set within sixty (60) days of the filing of the evaluation. § 632.492 ("Within sixty days after the completion of any examination held pursuant to section 632.489, the court shall conduct a trial to determine whether the person is a sexually violent predator. The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and when the respondent will not be substantially prejudiced…")

[6] Based on the findings of the SVP court, the continuance was for Appellant to be able to find representation and prepare a defense. There was no mention of the guardianship proceedings regarding this continuance.

The SVP Evaluator diagnosed Appellant with two mental abnormalities: exhibitionism and anti-social personality disorder. The SVP Evaluator did not find him delusional in any way. According to a psychiatrist on Appellant's treatment team with DMH, Dr. Nezar El-Ruwie ("Treating Psychiatrist") in response to interrogatories, Appellant's principal diagnosis was an unspecified paraphilic disorder. The Treating Psychiatrist also diagnosed: bipolar affective disorder mixed with psychosis; anti-social personality disorder; substance abuse; and PTSD. The Treating Psychiatrist also mentioned the possibility Appellant suffered from shizoaffective disorder, but Appellant's treatment team was not able to rule this out as of the time of the guardianship petition. The Treating Psychiatrist also noted "verbal/physical aggression towards staff and peers repeatedly." In response to which environment would be "least restrictive" for Appellant, Appellant's Treating Psychiatrist said he should be kept in the SORTS maximum security mental health facility at SMMHC.

A guardianship hearing was scheduled for September 30, 2016 but was continued to November 16, 2016[7]. With the parties' consent, the SVP court continued the SVP trial for a second time from October 24, 2016 to December 5, 2016[8]. The Guardianship hearing was continued from November 16, 2016 to December 12, 2016[9]. Neither court made reference to the other proceeding in ordering any of the continuances. On October 25, 2016, the SVP Evaluator was deposed to discuss his evaluation of Appellant. At the deposition, the SVP Evaluator said "without having the guardian done and all of the pieces in place,…I would just be speculating on what could be done."

---

[7] Attorney for Appellant requested the continuance to "consult with [Appellant] and prepare a defense".
[8] According to motion filed by the Attorney General's office in June 2016, the psychiatrist who filed the end-of-confinement report was unavailable for the October 24, 2016 trial date.
[9] The Deputy Attorney General responsible for this guardianship petition was called out-of-state for a family emergency on November 11, 2016 making her unable to appear on November 16, 2016.

The SVP trial took place on December 6, 2016. The SVP Evaluator testified about Appellant's history of sexual behaviors and explained his evaluation of Appellant. For his evaluation, the SVP Evaluator had conducted three actuarial tests to provide a basis for the risk Appellant would reoffend if released from confinement. The SVP Evaluator performed a Static-99R test, a Static-2002R, and a Stable-2007 test. Considering the results from these tests and the review of Appellant's records, the SVP Evaluator found to a reasonable degree of psychological certainty that Appellant was more likely than not to reoffend if released from confinement. Later in his testimony, the SVP Evaluator acknowledged his awareness of the guardianship process having been professionally involved in guardianship cases on numerous occasions. The SVP Evaluator then said a guardianship would not reduce the risk of Appellant reoffending. Appellant also testified in his own defense.

The SVP court found the SVP Evaluator testified on his opinions and conclusions to a reasonable degree of psychological certainty. The SVP court cited the tests used by the SVP Evaluator in finding he was more likely than not to reoffend if released from confinement. The SVP court's findings also referred to the testimony of the SVP Evaluator about Appellant's behavior in the community, conduct in jail, and treatment of "fellow citizens, inmates, and employees of [DOC] and [DMH]" in finding Appellant met the statutory definition of an SVP. The SVP court committed Appellant to the custody of DMH to be kept in a secure facility, SORTS at the SMMHC in Farmington, Missouri.

The guardianship hearing never occurred.

This appeal followed.

**Discussion**

Appellant argues three points on appeal regarding the necessity to complete a guardianship hearing prior to an SVP trial. In Point I and II, Appellant suggests the SVP court and his SVP counsel should have continued the SVP trial. In Point III, Appellant argues the SVP trial was arbitrary due to its occurrence prior to the guardianship hearing. Because the disposition of Point III will affect our decision on Point I and II, we will address Point III first.

Constitutionality of the MCRA: Appellant's Point III

Appellant claims the Act is unconstitutional because it allowed Appellant to be committed arbitrarily when a guardianship proceeding was pending. Appellant alleges a guardian would have allowed commitment by DMH in the least restrictive environment with treatment and habilitation better suited to his needs. Respondent counters that the Act is constitutional as applied to Appellant because he was properly committed under the Act and the Act does not require he be committed to the least restrictive environment.

*Standard of Review*

In order to show the Act is unconstitutional under these circumstances, an Appellant must show the Act is not narrowly tailored to serve a compelling state interest justifying differential treatment of individuals adjudicated as SVPs. *In re Care & Treatment of Norton*, 123 S.W.3d 170, 174 (Mo. banc 2003). The Supreme Court of Missouri has decided a commitment as an SVP is "narrowly tailored" and serves the compelling state interest of "protecting the public from crime" which justifies differential treatment. *Kirk v. State*, 520 S.W.3d 443, 450 (Mo. banc 2017) quoting *Norton*, 123 S.W.3d at 174.

*Analysis*

Appellant does not cite any caselaw or statutory provision which adequately supports the contention a guardianship proceeding should precede an SVP proceeding. The SVP proceedings began 11 months prior to the filing of the guardianship petition. An end-of-confinement report was sent to DMH to suggest Appellant may be an SVP. DMH took Appellant into custody. A multi-disciplinary team and a review committee both voted on Appellant as a potential SVP. The Probable Cause court held a probable cause hearing before transferring to the SVP court in a new division for trial. The SVP Evaluator performed an evaluation of Appellant all before General Counsel filed the guardianship petition. Because the Supreme Court of Missouri has affirmed and reaffirmed the Act as constitutional and the evidence presented suggested the appointment of a guardian would not affect the SVP trial, the Act was not used to arbitrarily commit Appellant as an SVP.

The Supreme Court of Missouri has ruled the Act is not unconstitutional for failing to require the "least restrictive environment". *Kirk*, 520 S.W.3d 450-51. Appellant fails to show any reason why the Act was arbitrarily or unconstitutionally applied to Appellant.[10]

Point III is denied.

Failure of SVP Court to Continue Trial: Appellant's Point I

Appellant claims the SVP court erred and abused its discretion in failing to continue the SVP trial *sua sponte* until after a final judgment in a pending guardianship proceeding. Appellant alleges this failure compromised the SVP Evaluator's evaluation of Appellant because a court-appointed guardian could have reduced Appellant's risk to the public by providing control over Appellant and the return to the community. According to Appellant, manifest

---

[10] Appellant also fails to address the Treating Psychiatrist's opinion presented in response to interrogatories in the guardianship proceedings that the least restrictive environment for Appellant is SORTS, the same facility in which the SVP court committed him.

8

injustice or a miscarriage of justice occurred because the lack of a continuance affected the outcome of the examination by the SVP Evaluator. Respondent counters the SVP court did not err because the guardianship decision was collateral to and had no bearing on the SVP trial.

*Standard of Review*

Appellant concedes he did not preserve this issue for appeal. This court has the discretion to review for plain error "when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). "Plain error is found only where the alleged error establishes substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *Hensley v. Jackson County*, 227 S.W.3d 491, 498 (Mo. banc 2007).

Appellant has not shown manifest injustice or a miscarriage of justice occurred from the failure to continue the SVP trial. In order to show manifest injustice or a miscarriage of justice for a failure to continue, an appellant must show the results of the hearing or trial would have been different had the continuance been granted. *State v. Wolf*, 91 S.W.3d 636, 645 (Mo. App. W.D. 2002).

*Analysis*

The court has discretion to *sua sponte* continue an SVP trial "in the due administration of justice". § 632.492. We need not discuss Appellant's argument the SVP court abused its discretion or erred because Appellant did not show the manifest injustice or miscarriage of justice required in plain error review. In order to do so, Appellant was required to show the SVP Evaluator's evaluation would have been different if the SVP court had continued the trial. The SVP Evaluator testified a guardian would not reduce the risk of Appellant reoffending in this case. Appellant's claim is refuted by this testimony. Appellant cannot show the SVP

9

Evaluator's evaluation would have been different or would have affected the result of the SVP trial had the guardianship hearing occurred before the SVP trial.

Further the opinion of the Treating Psychiatrist in the guardianship action was Appellant should be committed to the SORTS facility. This is the same conclusion as the SVP Evaluator. There are no grounds to believe a manifest injustice or miscarriage of justice has occurred.

Point I is denied.

Ineffective Assistance of Counsel: Appellant's Point II

Appellant claims his counsel at the SVP trial was ineffective because SVP counsel failed to request a continuance. According to Appellant, this prevented the SVP Evaluator from incorporating the appointment of a guardian as a mitigating factor in his evaluation of Appellant and the risks of future acts associated with his release. Appellant further claims the result of the SVP trial would have been different had the continuance been requested and granted. Respondent counters the failure to request a continuance by Appellant's counsel at the SVP trial was not ineffective assistance because the guardianship decision would not have affected the result of the SVP trial.

*Standard of Review*

Appellant employs the *Strickland* test in arguing the ineffective assistance of counsel claim for failing to request a continuance of the SVP trial. The legal procedure for the review of ineffective assistance of SVP counsel in Missouri has not been firmly established. *Grado v. State*, 559 S.W.3d 888, 897-98 (Mo. banc 2018). An individual in SVP proceedings is entitled to effective assistance of counsel. *Id*. at 896 citing *State ex rel. Mo. Pub. Defender Comm'n v. Waters*, 370 S.W.3d 592, 609 (Mo. banc 2012). In *Grado*, the appellant suggested the *Strickland* standard for ineffective assistance of SVP counsel while the State suggested the "meaningful

10

hearing" standard used in parental rights cases such as *In Interest of J.P.B.*, 509 S.W.3d 84, 97 (Mo. banc 2017). *Grado*, 559 S.W.3d at 892. The Supreme Court of Missouri found the determination of the appropriate standard was "an issue that must be left for another day" because appellant "would not be entitled to relief under [either] standard". *Id*. at 898.

Here, Appellant and the State both employed the *Strickland* test in assessing the ineffective assistance of SVP counsel claim. Because there is sufficient evidence in the record before us to review ineffective assistance of counsel under the *Strickland* standard and absent controlling precedent, a Supreme Court Rule, or statutory framework, we will follow the *Strickland* analysis Appellant and Respondent employed.

To be entitled to post-conviction relief for ineffective assistance of counsel, a movant must show by a preponderance of the evidence that his or her trial counsel failed to meet the *Strickland* test. *Worthington v. State*, 166 S.W.3d 566, 572–73 (Mo. banc 2005) citing *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test requires: (1) trial counsel failed to exercise the level of skill and diligence a reasonably competent counsel would in a similar situation and (2) movant was prejudiced by the failure. *Strickland*, 466 U.S. at 687. "Trial strategy decisions may only serve as a basis for ineffective counsel if they are unreasonable." *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009). In order to prove the prejudice prong of Strickland, the question is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. If a movant does not show both the "performance" prong and the "prejudice" prong, the movant is not entitled to postconviction relief. *Worthington*, 166 S.W.3d at 572-73.

*Analysis*

At trial, the SVP Evaluator testified the appointment of a guardian for Appellant would not have affected his expert opinion. When asked on cross-examination if guardianship would reduce Appellant's risk, the SVP Evaluator said it would not. Guardianship "simply hands decision making to another person." This change of decision making ability did not have an effect on the SVP Evaluator's findings for the risk of reoffending.

Appellant claims he has been prejudiced by SVP counsel's failure to continue the SVP trial. Appellant argues, without the continuance, SVP counsel could not know if a guardian would be appointed and the SVP Evaluator could not properly consider the effect of a guardian on Appellant's risk. The SVP Evaluator testified at trial that a guardian being appointed would not reduce Appellant's risk of reoffending if he was released from confinement.

Furthermore, Appellant's Treating Psychiatrist in the guardianship action stated the least restrictive environment for Appellant is the SORTS facility. This is the same facility ordered by the SVP court.

The record refutes any probability that, but for counsel's failure to request a continuance, the result of the proceeding would have been different. Therefore, Appellant's claim of prejudice is refuted by the record. As Appellant has failed to meet the "prejudice" prong of the *Strickland* test, we do not need to analyze the "performance" prong. *Strickland*, 466 U.S. at 694; *Worthington*, 166 S.W.3d at 572-73.

Point II is denied.

## Conclusion

For the foregoing reasons, we affirm the decision of the SVP court in finding Appellant an SVP.

_____
Philip M. Hess, Presiding Judge

Robert G. Dowd, Jr., J. and
Mary K. Hoff, J. concur.