

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

CHRISTIAN VANNAMAN,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Appellant,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀WD87067
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀OPINION FILED:
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀August 5, 2025
STATE OF MISSOURI,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀Respondent.⠀)

### Appeal from the Circuit Court of Buchanan County, Missouri
### The Honorable David L. Bolander, Judge

**Before Division Three:** Mark D. Pfeiffer, Presiding Judge,
Cynthia L. Martin, Judge, and Janet Sutton, Judge

Mr. Christian Vannaman ("Vannaman") appeals from the judgment of the Circuit

Court of Buchanan County, Missouri ("motion court[1]"), denying, after an evidentiary

hearing, his motion for post-conviction relief pursuant to Rule 24.035.[2]  Vannaman

claims on appeal that his sentencing counsel ("sentencing counsel") provided

constitutionally ineffective assistance of counsel by failing to request a continuance of the

---

[1] The same judge accepted Vannaman's guilty plea, sentenced Vannaman, and heard Vannaman's Rule 24.035 motion.

[2] All rule references are to I MISSOURI COURT RULES – STATE 2022, unless otherwise indicated.

sentencing hearing, by failing to present additional evidence at the sentencing hearing, and by failing to prepare Vannaman for allocution at the sentencing hearing. We affirm.

**Factual and Procedural Background**[3]

Vannaman was charged with the class B felony of assault in the first degree in violation of section 565.050,[4] after he went into the lobby of an apartment complex in June 2020, pointed a gun at the victim[5] after the victim stood up and then proceeded to shoot the victim, which seriously injured and nearly killed him. Vannaman was seventeen at the time of the shooting.

*A.      Vannaman's Plea Hearing*

Vannaman entered into a plea agreement with the State in November 2021 in which he pleaded guilty to assault in the first degree, and the State agreed not to file any additional charges and to argue for a sentence of no more than ten years. Vannaman testified at his plea hearing that he understood the terms of the plea agreement, that the range of punishment for the offense was five to fifteen years of imprisonment or a fine, that the sentence he would receive was "solely a matter within the control" of the sentencing court, and that the sentencing court was "not bound to follow the plea

---

[3] "On appeal from the motion court's denial of a Rule 24.035 motion, we view the facts in the light most favorable to the motion court's judgment." *Henry v. State*, 666 S.W.3d 177, 179 (Mo. App. W.D. 2023).

[4] All statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through June 27, 2020, unless otherwise indicated.

[5] Pursuant to the directive of section 509.520.1(4) (Supp. IV 2024), we do not use the names of any victims in this opinion. Additionally, per Missouri Supreme Court Operating Rule 2.02(c)(3), we do not identify the names of non-party witnesses in our ruling today.

2

agreement." The plea court judge—who also served as the judge for Vannaman's sentencing *and* as the judge in the underlying Rule 24.035 motion proceedings—accepted the plea, ordered a sentencing assessment report ("SAR"), and docketed the sentencing hearing for January 2022.

B.      *Vannaman's Sentencing Hearing*

At Vannaman's sentencing hearing, Vannaman's sentencing counsel was different than the attorney who had represented him at his plea proceedings.

The State introduced into evidence a video of the shooting for the sentencing court to watch, as well as evidence of Vannaman's illicit drug use at the time of the shooting—a fact that was not disputed by Vannaman. The State also called the victim's mother, who read two letters to the sentencing court regarding the physical and emotional impact of the shooting on her son. Both the victim and the victim's mother requested that the sentencing court impose a ten-year sentence.

Sentencing counsel presented no evidence at the hearing but emphasized to the sentencing court Vannaman's youth and substance abuse problem:

> He made that decision in a split second at . . . 17 years old. Totally unacceptable behavior, and he knew that, and that's why he waived a right to a self-defense claim in this . . . ."
>
> . . . .
>
> . . . [M]y client had a terrible substance abuse problem during that time, and that is a mitigating factor. On top of it, he had a substance abuse problem while he was still a child at 17 years old. . . .
>
> . . . .

3

Judge, we're asking for the Court to consider all the factors that I just laid out to you as far as leniency goes. We are asking the Court to consider suspending execution of sentence and placing my client on probation because of his remorse, because he is a 17-year-old boy . . . .

As an alternative to probation, sentencing counsel requested the court impose a five-year sentence, the statutory minimum. In support of sentencing counsel's recommendation and in addition to her emphasis on Vannaman's age and on the fact that he was under the influence of illicit drugs at the time of his criminal wrongdoing, sentencing counsel highlighted Vannaman's good behavior on bond, the one year he had spent in county jail, and the fact that Vannaman would have to complete 85% of any ordered sentence.

Before his sentence was imposed, Vannaman addressed the court:

I didn't really prepare myself a hundred percent and write a letter like the victim and the victim's mother did. I just want to comment. Doing it off the top of my head, you know, I feel like it would be more coming from the heart than just sitting and writing.

Look, I know—I know I caused a lot of pain. I know—I know that I hurt the victim. I know I made a horrible mistake. I'm not asking for no slap on the wrist. I'm not asking for none of that. I'm not up here to say none of that.

I'm just up here to apologize to the victim and his family for the pain and emotional damage that I caused him. And he may never forgive me. I just want to say that I'm sorry for what I did to you. Sorry for what I caused you. Sorry for what all I caused your family. Everything everybody's been through.

With all that being said, Judge, I—I really can't say anything else off the top of my head. I just wanted to get up here and apologize while I had the chance to. I do apologize.

The sentencing court imposed the State's recommended sentence of ten years in the Department of Corrections, citing the overwhelming severity of Vannaman's crime: "I

4

certainly appreciate your apology. It's difficult what the victim and his family have gone through, and I do appreciate that. However, your actions on that day . . . were appalling, and I am going to follow the prosecutor's recommendation . . . ."[6] Following imposition of sentence, the sentencing court questioned Vannaman, just as it had done during Vannaman's plea hearing, to determine whether Vannaman had any complaints of either his plea counsel or sentencing counsel:

Q: Are you satisfied with the legal work performed for you in this case?

A: Yes, sir.

Q: Do you have any complaints of any kind about the work your lawyer did for you?

A: No, sir.

Q: Did your lawyer do everything that you asked of her to do for you in this case? I understand that you had [previous counsel] and now you have [sentencing counsel]; is that correct?

A: Yes, sir.

Q: Did they do everything that you asked of them?

A: Yes.

Q: Is there anything you expected your lawyer to do for you that didn't happen for any reason?

A: No, sir.

Q: Did your lawyer investigate the case to your satisfaction?

---

[6] The sentencing court had video footage from the apartment complex capturing Vannaman shooting the unarmed victim; medical photographs depicting life-altering injuries to the victim; and, a victim impact statement from the victim's mother, who observed her unconscious son near death in his hospital bed.

5

A:      Yes, sir.

. . . .

Q:      Is there anything that you think that a very good lawyer would do for someone in your situation and your lawyer failed or refused to do it?

A:      No, sir.

Q:      In your opinion, did your lawyer do everything that she could do to help you in this case?

A:      Yes, sir.

Q:      In your opinion, did your lawyer give you competent and effective legal counsel in this case?

A:      Yes, sir.

Q:      Did your lawyer or anybody promise you that you would receive a different sentence in this case or would be released on parole or eligible for parole after serving a certain portion of any sentence you might receive?

A:      No, sir.

Q:      Is there anything you would like to tell me outside the presence of your lawyer?

A:      No, sir.

C.      *Vannaman's Motion Claiming Ineffective Assistance of Sentencing Counsel*

Vannaman's amended Rule 24.035 motion[7] raised four claims of ineffective assistance of counsel: first, that sentencing counsel was ineffective for failing to request a continuance; second, that sentencing counsel was ineffective for failing to investigate and present mitigation evidence at Vannaman's sentencing hearing; third, that sentencing

---

[7] Vannaman timely filed a *pro se* Rule 24.035 motion on February 28, 2022. Vannaman's subsequently appointed counsel then timely filed an amended motion on August 1, 2022.

counsel was ineffective for failing to call an expert in adolescent brain development to testify at Vannaman's sentencing hearing; and fourth, that sentencing counsel was ineffective for failing to prepare Vannaman for allocution at his sentencing hearing.

The motion court held an evidentiary hearing on Vannaman's post-conviction relief ("PCR") motion on January 18, 2024. At the hearing, PCR counsel advised the motion court that, because Vannaman accepted responsibility for his actions, he was not asking that his plea be withdrawn; rather, Vannaman requested that the motion court withdraw the sentence and set a new sentencing hearing. His PCR counsel called three witnesses—an adolescent-brain-development expert and both of Vannaman's parents. Additionally, the motion court admitted without objection the plea hearing transcript, the sentencing hearing transcript, plea counsel's transfer memo and sentencing notes, Vannaman's deposition testimony, and sentencing counsel's deposition testimony.

### 1. Expert Testimony on the Adolescent Brain

At the evidentiary hearing, PCR counsel called Dr. S.I., a neuropsychologist, to testify about her expertise in brain-behavior relationships. Dr. S.I. had not spoken to or met with Vannaman; nor had she performed any individualized evaluation of Vannaman. Accordingly, Dr. S.I. admitted that she had not made any judgments specific to Vannaman or his behavior in the underlying criminal case. Dr. S.I. stated that her testimony regarding adolescent brain development versus adult behavior had been generally consistent anytime she testified, specifically that, "the parts of the brain that are responsible for judgment, decision making, and impulse control—continue to mature and do not reach full maturity until approximately age 22, which leaves adolescents

7

vulnerable to poor decision making and poor behavioral control well into the age of legal majority." On cross-examination, Dr. S.I. agreed that adolescents had some ability to analyze, to reason through risks and benefits, and to make decisions. Dr. S.I. also stated that she was not suggesting that adolescents, such as Vannaman, should never be held accountable for their behavior.

### 2. Testimony of Vannaman's Parents

PCR counsel called Vannaman's father ("Father"), who testified that Vannaman was a good, goal-oriented young man, who was forced to drop out of high school when he was sixteen so that he could get a job to provide for his newborn son, and that Vannaman was committed to taking care of his son.

Vannaman's mother ("Mother") also testified at the PCR evidentiary hearing. Mother testified that, although Vannaman had been "a little hard to deal with" when he was younger, he had matured and become a more responsible person after his son was born—and that Vannaman was active in caring for his son like a good father.

### 3. Vannaman's Deposition Testimony

Vannaman testified that he met with sentencing counsel for a period of roughly thirty minutes immediately prior to his sentencing hearing at which time sentencing counsel informed him that he was being sentenced. Vannaman testified that he did not know he could make a statement at his sentencing hearing beforehand and that, if he had known beforehand that he would have the opportunity to speak to the judge at sentencing, he would have wanted guidance or advice from sentencing counsel. Vannaman testified that, if he had been prepared to speak at sentencing, he would have told the motion court

8

that he did not intend to harm anyone on the day of the shooting, that he realized that "the criminal lifestyle that I participated in is not the life that I wanted for myself, nor my family or son," and that while out on bond, he participated in some counseling and anger management classes. Vannaman testified that he would have expressed to the sentencing court that he was grateful for victim's survival and that he had learned from his actions.

### 4. Sentencing Counsel's Deposition Testimony

Sentencing counsel testified that she entered her appearance on Vannaman's case on December 22, 2021, a little over two weeks prior to Vannaman's sentencing hearing. At this time, sentencing counsel was the District Defender at the St. Joseph Public Defender's Office, and if an attorney in the office was leaving the office, she would enter her appearance to establish an attorney of record and to review the case. If she remained the attorney of record, she would go through the file, including any transfer memos and sentencing notes from the prior attorneys. Sentencing counsel testified that she reviewed the transfer memos and sentencing notes from the prior attorney in Vannaman's case prior to his sentencing, as well as Vannaman's SAR—which she also reviewed with Vannaman. In fact, at the sentencing hearing, sentencing counsel inquired of the court whether it had received the corrected supplemental SAR that had been filed. In addition, sentencing counsel testified that she knew that there was a plea agreement not to file additional charges along with the State's agreement to cap its request for prison sentencing at ten years.

Sentencing counsel testified that in circumstances where she did not have enough time to familiarize herself with a client's case, she would have several options, including

9

requesting a continuance or requesting a recess, but that it also depended on the client's wishes. At the time of sentencing counsel's deposition for the PCR evidentiary hearing, she did not recall whether she had any strategic reason for not requesting a continuance but also stated that she knew Vannaman's case had been pending for a long time.

Sentencing counsel testified that there is no one correct way to defend a criminal defendant at sentencing but that generally offering more information about a client's background and personal history can help, depending on the judge, because judges consider a variety of factors and weigh those factors differently. Sentencing counsel noted that if information or commentary from potential witnesses are included in the SAR, sentencing counsel did not typically duplicate that same information through live witness testimony. In Vannaman's case, the SAR reflected favorable comments from Vannaman's parents.

Sentencing counsel recalled speaking with Vannaman about her strategy and goals for sentencing before the hearing, but she did not think she spoke with Vannaman about calling witnesses to testify on his behalf at sentencing. She noted that biased witnesses, like parents of the criminal defendant, did not usually carry much weight with most judges. Sentencing counsel did not recall speaking with Vannaman about calling witnesses but planned to argue his youth and illicit drug use as mitigating factors.

Sentencing counsel recalled that she highlighted Vannaman's age at the sentencing hearing as part of her sentencing strategy because age or youthfulness is usually a mitigating factor in sentencing. While sentencing counsel agreed that it could have been helpful for the judge to hear about the science behind adolescent brain development and

10

that youthful offenders have greater potential for rehabilitation than adult offenders, she also testified that there were a variety of reasons not to call an expert on this topic at sentencing and opined that the scientific concept that there is a period when adolescent brain development is occurring up to a certain age is common knowledge to judges she appeared before.

Sentencing counsel testified that she did not speak with Vannaman about the opportunity to speak to the judge before sentencing but also did not recall Vannaman expressing any interest in doing so.

*D.    Judgment*

The motion court denied Vannaman's claims following the evidentiary hearing, finding that Vannaman had not carried his burden of demonstrating *Strickland* prejudice.

Vannaman timely appealed.

**Standard of Review**

> Appellate review of the denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the trial court are clearly erroneous.  The motion court's findings and conclusions are clearly erroneous only if, after reviewing the entire record, the appellate court is left with the definite and firm impression that a mistake has been made.  We will affirm the motion court's judgment if it is sustainable on any grounds.  The movant has the burden of proving movant's claims for relief by a preponderance of the evidence.

*Henry v. State*, 666 S.W.3d 177, 181 (Mo. App. W.D. 2023) (citation modified).

**Analysis**

On appeal, Vannaman asserts that the motion court erred in denying his claims that sentencing counsel provided ineffective assistance of counsel by failing to request a

11

continuance of the sentencing hearing, by failing to call his parents as mitigation witnesses, by failing to call an expert witness to testify on adolescent brain development, and by failing to prepare Vannaman for allocution.

"A claim of ineffective assistance of counsel at sentencing following a guilty plea is a 'cognizable' claim under Rule 24.035." *Cherco v. State*, 309 S.W.3d 819, 825 (Mo. App. W.D. 2010). "If a defendant aggrieved by ineffective assistance of counsel at sentencing is willing to abide by the guilty plea or conviction, the defendant nonetheless may have recourse under a post-conviction motion if the defendant demonstrates . . . a reasonable probability that sentencing was influenced by ineffective assistance of counsel during sentencing." *Id*. at 830. "[T]he two-pronged test from *Strickland* applies equally to claims of ineffective assistance of counsel arising out of a sentencing hearing." *Id.* at 825 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

*Strickland's* two-prong test requires a movant to show that (1) sentencing counsel's performance was deficient because she failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) sentencing counsel's deficient performance prejudiced the movant. *Cherco*, 309 S.W.3d at 822 (citing *Strickland*, 466 U.S. at 687); *McIntosh v. State*, 413 S.W.3d 320, 324 (Mo. banc 2013). To establish deficient performance, a movant must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Cherco*, 309 S.W.3d at 825. To demonstrate prejudice in this context, the movant must show that without the deficient performance, "the result of the sentencing would have been different, specifically, that his sentence would have been

lower." *Dawson v. State*, 611 S.W.3d 761, 769 (Mo. App. W.D. 2020) (quoting *Jones v. State*, 541 S.W.3d 694, 697 (Mo. App. W.D. 2018)). "If either the performance prong or the prejudice prong is not met, then we need not consider the other, as the claim of ineffective assistance of counsel must fail if either prong is not present." *Nigro v. State*, 467 S.W.3d 881, 885 (Mo. App. W.D. 2015) (quotation marks omitted). Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we may begin our analysis with the second prong. *Strickland*, 466 U.S. at 697.

Here, it is this second prong of the *Strickland* test upon which the motion court based its denial of Vannaman's Rule 24.035 motion—that Vannaman failed to demonstrate prejudice because the motion court found that, even if the additional evidence had been heard, it would not have changed the sentence imposed.

Especially relevant to Vannaman's situation, "[s]pecial deference is given when the motion court judge and sentencing judge are the same," *Bozeman v. State*, 653 S.W.3d 132, 137 (Mo. App. E.D. 2022) (citing *Dowell v. State*, 615 S.W.3d 123, 127 (Mo. App. W.D. 2021)), because "[g]iven the indeterminate nature of sentencing, prejudice based on a claim that ineffective assistance of counsel affected sentencing is nearly impossible to establish, *especially when the motion court and sentencing court are the same*," *id.* (emphasis added) (citing *Cherco*, 309 S.W.3d at 831); *see also Wills v. State*, 321 S.W.3d 375, 384 & n.6 (Mo. App. W.D. 2010) (finding movant's inability to demonstrate prejudice from absence of evidence pertaining to his mental health at sentencing hearing dispositive where the motion court—also the sentencing court—determined that

13

movant's sentence would not have changed); *Cherco*, 309 S.W.3d at 831 ("That [difficulty of establishing prejudice in sentencing] is particularly true where, as here, the sentencing court and the motion court are one [and] the same, rendering a motion court's finding that character witnesses would not have ameliorated the sentence virtually unchallengeable under the clearly erroneous standard."); *House v. State*, 692 S.W.3d 455, 461 (Mo. App. S.D. 2024) (holding that prejudice at sentencing is "*nearly impossible to establish*, especially when the motion court and sentencing court are the same" and the motion court concludes that the sentence would not have changed (emphasis added) (quoting *Bozeman*, 653 S.W.3d at 137)).

And, recently, our Missouri Supreme Court has weighed in on the topic of *Strickland* prejudice when the same judge presides over the criminal trial proceeding as well as the civil PCR proceeding. In *Flaherty v. State*, 694 S.W.3d 413 (Mo. banc 2024), a criminal defendant *successfully* established the *Strickland* performance prong relating to instructional error, but in a procedural circumstance in which the motion court judge had also presided over the criminal defendant's trial, our Supreme Court concluded that, "[t]he additional deference due a judge who also presided over the criminal trial weighs strongly in favor of affirming the motion court's finding that Flaherty was not prejudiced by counsel's deficient performance." *Id.* at 423. In so finding, the Supreme Court reasoned that "[t]he judge making this finding [that the *Strickland* prejudice prong had not been met] was the judge in the underlying criminal trial, and this vantage can give the motion court powerful insight into the issues raised in a postconviction proceeding." *Id.*

14

And, "[m]ore important, the judge saw *the impact of [the] evidence on the jury*." *Id.* (emphasis added).

Because the PCR motion here was brought under Rule 24.035 instead of Rule 29.15, the "jury" that decided Vannaman's sentence was not a jury of his peers; instead, it was one person—the *same judge* that later decided the new evidence presented at the PCR evidentiary hearing did not satisfy the *Strickland* prejudice prong because the new evidence would not have altered Vannaman's sentence.

Under this backdrop, we review the objective reasonableness of the motion court's *Strickland* prejudice prong finding below. *See id.* at 421 ("applying *Strickland's* rigorous, objective review of the circumstances" to the motion court's finding that the movant failed to establish prejudice—even though the motion court's lack-of-prejudice finding was entitled to heightened deference because the trial court and the motion court were the same—and concluding that "there was sufficient evidence to support that finding"); *Dawson*, 611 S.W.3d at 771 (evaluating whether the motion court's conclusion—that sentencing counsel's purported error would have had no effect on sentencing—was objectively reasonable, even though such a finding was "virtually unchallengeable" due to the motion court and sentencing court being the same).

**Point I**

Vannaman asserts that sentencing counsel's failure to request a continuance of the sentencing hearing amounted to ineffective assistance of counsel because sentencing counsel had only entered her appearance in Vannaman's case two weeks beforehand and was "unprepared to proceed at sentencing." Vannaman's argument relies on the premise

15

that, had a continuance been requested and granted,[8] sentencing counsel presumably would have then presented the very evidence Vannaman presented at the PCR hearing. Vannaman's claim of error here then is entirely dependent on the success of his other three claims of error. Thus, if none of the other claims of error meet the burden of proof required by the *Strickland* test, the claim that sentencing counsel should have sought a continuance must also fail for lack of prejudice.

Indeed, the motion court's judgment suggests as much by acknowledging Vannaman's claim that a continuance should have been sought while nonetheless denying Vannaman's motion on the ground that none of the additional evidence presented would have changed Vannaman's sentence. *See State v. Davis*, 900 S.W.2d 649, 654 (Mo. App. S.D. 1995) (no evidence to support prejudice for counsel's failure to request a continuance where there was no proof provided to the motion court that the testimony of the witnesses who would have been called would have aided movant if a continuance had been granted); *In re D.D.*, 575 S.W.3d 771, 779 (Mo. App. E.D. 2019) (holding that where the result of the proceeding would not have been different had a continuance been

---

[8] As Vannaman acknowledges, the decision to grant a continuance where one is requested, however, is within the trial court's discretion. *State v. Salter*, 250 S.W.3d 705, 712 (Mo. banc 2008) (citing *State v. Christeson*, 50 S.W.3d 251, 261 (Mo. banc 2001) (trial court does not abuse its discretion in overruling a motion for a continuance when counsel had adequate time to prepare)). To prevail on his claim of prejudice, Vannaman must show that such a continuance was likely to be granted, and he offers no assurance that such a motion would have been granted, especially given sentencing counsel's understanding that Vannaman's case had been pending for a long time.

requested, the "prejudice" prong of *Strickland* has not been met, and the court does "not need to analyze the 'performance' prong").

Given our analysis on Vannaman's remaining points on appeal, since the result of the proceeding below would not have been different had a continuance been requested, the *Strickland* prejudice prong has, likewise, not been met regarding Vannaman's first point on appeal.

Accordingly, Point I is denied.[9]

## Point II

In his second point on appeal, Vannaman claims that sentencing counsel provided ineffective assistance of counsel by failing to call Vannaman's parents as witnesses to provide mitigation testimony at sentencing.

For a movant "to establish that his trial counsel was ineffective for failure to call a witness, he must show that the decision involved something other than reasonable trial

---

[9] Vannaman takes issue with the motion court stating that the evidence presented at the PCR hearing would not have made a "material impact" on the sentence imposed—arguing that *any* change in Vannaman's sentence would be sufficient to demonstrate prejudice. It is clear, however, from the totality of the motion court's judgment that the motion court concluded that the result of Vannaman's sentence would not have been different in any way, even if the additional evidence from the PCR hearing had been presented at the sentencing hearing; for, as the judge who both sentenced Vannaman and ruled upon Vannaman's PCR motion commented—the crime committed was "appalling," and the impact upon the victim and the victim's family significantly outweighed any mitigation testimony. *See Dawson v. State*, 611 S.W.3d 761, 769 (Mo. App. W.D. 2020) (denying a claim of ineffective assistance where the motion court concluded that additional witness testimony would have had no effect on the sentence). For reasons articulated in the remainder of today's ruling, we likewise find that Vannaman's PCR motion fails to meet his burden of establishing the *Strickland* prejudice prong, and we may affirm the motion court's judgment for any reason supported by the record. *See Polk v. State*, 539 S.W.3d 808, 819 (Mo. App. W.D. 2017).

17

strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness' testimony *would have aided in [the movant's] defense*." *Cherco*, 309 S.W.3d at 825 (emphasis added) (quotation marks omitted). In the context of sentencing, the failure to call character witnesses must meet the prejudice prong in *Strickland*; in other words, movant must show that had the character witnesses testified at the sentencing hearing, there is a "reasonable probability that more lenient sentences would have been imposed" on the movant. *Id.* at 830 ("Though we conclude that it was technically permissible for Cherco to claim prejudice affecting the outcome of his sentencing hearing without seeking to vacate his guilty plea, we also conclude that Cherco has failed to demonstrate prejudice with his argument that but for counsel's failure to call character witnesses his sentence would have been lower.").

In *Cherco*, the movant, who entered into a plea agreement after having been charged with several counts of felony domestic assault and felony restraint, claimed that sentencing counsel was ineffective by failing to present testimony from six character witnesses—the movant's mother, his uncle, a friend of the family, his sister-in-law, a former girlfriend, and a friend of movant's cousin. *Id.* at 825. The motion court judge, after hearing the testimony from these uncalled witnesses at the PCR hearing, concluded that even if the witnesses had testified at the sentencing hearing, there was "no reasonable probability that more lenient sentences would have been imposed." *Id.* at 830. In fact, the *Cherco* court observed that it was "difficult to envision a scenario where the weighty

18

burden of establishing prejudice can be sustained by such a hypothetical supposition given the indeterminate nature of sentencing." *Id.* at 831.

Similar to the motion court judge in *Cherco*, the motion court judge here was presented with the testimony of Vannaman's mother and father that was not presented at sentencing, and the motion court judge concluded that the additional evidence would not have altered the sentence imposed. Furthermore, there are objective reasons in the record justifying the motion court's conclusion.

First, unlike *Cherco*, the sentencing court had access to positive commentary from Vannaman's parents in the SAR before sentencing Vannaman—and sentencing counsel had gone out of her way to ensure that the sentencing court had the most current version of the SAR. Second, Vannaman's parents merely testified at the PCR hearing that, after the birth of his son, Vannaman had matured and become a "good father." That said, the birth of Vannaman's son occurred *before* Vannaman decided to shoot victim—so it is hard to see how the "changed young man" parental testimony would have been able to account for the violent tendencies that remained after Vannaman had purportedly "matured" upon the birth of his own son. Finally, the testimony regarding Vannaman's character would not have changed the appalling nature of Vannaman's crime, which the sentencing court identified as an overriding consideration in imposing its sentence.

Given the deference afforded a motion court judge who was also the sentencing judge and given the nature of the duplicative character testimony offered that did not differ materially from their statements in the SAR that was available to the sentencing

19

court, Vannaman cannot meet *Strickland's* prejudice prong. The motion court did not clearly err in denying Vannaman's claim for relief.

Point II is denied.

## Point III

Vannaman claims in his third point of error that sentencing counsel provided ineffective assistance of counsel by failing to call Dr. S.I., an expert witness in adolescent brain development, to provide testimony at sentencing. Vannaman claims that the motion court clearly erred because Dr. S.I.'s testimony would have provided mitigating context for Vannaman's actions and his potential for rehabilitation.

Vannaman's argument again ignores the fact that the motion court—the same court that imposed Vannaman's sentence—considered the violent underlying facts of Vannaman's crime at sentencing and found that sentencing counsel's failure to call an expert on adolescent brain development simply did not alter the sentence imposed. *See Dawson*, 611 S.W.3d at 769-71 (holding that no prejudice was shown on a claim of ineffective assistance of counsel where sentencing counsel chose not to call an expert on adolescent brain development, even when the expert had personally evaluated the seventeen-year-old defendant and would have testified that defendant had indications of "impulsivity, depression, anxiety, and trauma which delayed his development of adequate coping ability" because the motion court—the same court that sentenced defendant—concluded that testimony would not have resulted in a lower sentence).

Notwithstanding the deference afforded the motion court in this situation, the motion court's prejudice prong determination is not without an objective basis in the

20

record. Dr. S.I. had *not* specifically evaluated Vannaman's adolescent background, nor had she met him personally. Moreover, Dr. S.I. admitted that she had not made any judgments specific to Vannaman or his behavior in the underlying criminal case. In fact, Dr. S.I.'s testimony was not unique to Vannaman in any way other than the fact that he was an adolescent: her testimony regarding adolescent brain development versus adult behavior was admittedly generalized and consistent with what she always testified to.

Even taking into account Dr. S.I.'s testimony that adolescents make poor decisions and that their knowledge of right and wrong do not necessarily guide their behavior, Dr. S.I. admitted that she was not suggesting that adolescents, such as Vannaman, should never be held accountable for their behavior. As sentencing counsel—who, in fact, emphasized Vannaman's youth as a mitigating factor at sentencing—suggested in her testimony to the motion court, such general knowledge about the adolescent mind was "common knowledge to judges." Indeed, while Dr. S.I.'s testimony is presumed to have a scientific basis, the motion court was apprised of Vannaman's youth, and the general nature of Dr. S.I.'s testimony could not have provided the sentencing court with any additional specific reason for concluding that it should have been more lenient in sentencing Vannaman for the shooting of victim, especially in light of the fact that the sentencing court sentenced Vannaman to a ten-year sentence, even though the maximum range of punishment was fifteen years.

> Because of the high level of deference afforded to the motion court's judgment, the indeterminate nature of sentencing, and the lack of evidence showing a reasonable probability that the sentencing court would have considered the expert testimony and returned a lesser sentence, Movant

21

fails to satisfy *Strickland's* prejudice prong by a preponderance of the evidence.

*Bozeman*, 653 S.W.3d at 138.

Point III is denied.

**Point IV**

In his final claim that the motion court clearly erred in denying his PCR motion, Vannaman asserts that sentencing counsel erred by failing to prepare Vannaman for allocution at his sentencing. At sentencing, Vannaman gave a statement, which he now claims on appeal was deficient, expressing his remorse over his actions and accepting accountability for them. Vannaman does not identify how his allocution statement was deficient. And in his deposition offered into evidence at the motion hearing, Vannaman gave a similar and only slightly lengthier statement of remorse and a statement that he had "learned from his actions." Vannaman does not explain on appeal what instruction he should have received from sentencing counsel or how that instruction would have made a difference—especially in light of the sentencing court rejecting Vannaman's prior allocution, not because of its deficiency or lack of sincerity, but because of the appalling nature of Vannaman's crime.

Conclusory post-conviction allegations of prejudice without specific evidence showing how the alleged deficient performance would have led to a likely different result are insufficient to establish ineffective assistance of counsel. *Giammanco v. State*, 416 S.W.3d 833, 843 (Mo. App. E.D. 2013) (movant failed to specify in what way counsels' failure to depose witnesses allegedly prejudiced the defense); *Woods v. State*, 458 S.W.3d

22

352, 360 (Mo. App. W.D. 2014) ("Mere conclusory speculations of prejudice by Movant are not considered substantive evidence of counsel's ineffectiveness.").

Vannaman fails to satisfy both the *Strickland* performance and prejudice prongs by a preponderance of the evidence.

Point IV is denied.

## Conclusion

Finding no clear error,[10] the motion court's judgment is affirmed.

_Mark D. Pfeiffer_
Mark D. Pfeiffer, Presiding Judge

Cynthia L. Martin, Judge, and Janet Sutton, Judge, concur.

---

[10] Vannaman also asserts a claim for relief based upon cumulative prejudice. Because Vannaman has failed to prove prejudice from any of the claims of ineffective assistance of counsel raised in his amended motion, there can be no "cumulative" error from which this Court may grant relief. *State v. Weston*, 688 S.W.3d 1, 13 (Mo. App. W.D. 2024) (An appellate court "will not grant relief . . . when there is no showing that prejudice resulted from any rulings of the trial court.").